1  Gary L. Wilson (CA Bar #139358)
   Robins Kaplan LLP
2  2049 Century Park East, Suite 3400
   Los Angeles, CA 90067
3  Telephone: (310)-552-0130
   Facsimile: (310)-229-5800
4
   Munir R. Meghjee
5      Will Seek Admission *Pro Hac Vice*
   Troy F. Tatting
6      Will Seek Admission *Pro Hac Vice*
   Robins Kaplan LLP
7  800 LaSalle Avenue, Suite 2800
   Minneapolis, MN 55402
8  Telephone: (612) 349-8500
   Facsimile: (612) 339-4181
9  gwilson@robinskaplan.com
   mmeghjee@robinskaplan.com
10 ttatting@robinskaplan.com

11 *Attorneys for Plaintiff*

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14              SAN FRANCISCO DIVISION

15 Richard P. Carter,                    Case No. _____

16              Plaintiff,               **COMPLAINT FOR DAMAGES**
                                         1.  **Unfair and Deceptive Trade Practices**
17 v.                                        **(Unfairness)**
                                         2.  **Unfair and Deceptive Trade Practices**
18 Pfizer, Inc.,                             **(Fraud)**
                                         3.  **Unfair and Deceptive Trade Practices**
19              Defendant.                   **(Unlawfulness)**
                                         4.  **Strict Liability – Defective Design**
20                                       5.  **Strict Liability – Failure to Warn**
                                         6.  **Failure to Test**
21                                       7.  **Negligence**
                                         8.  **Gross Negligence**
22                                       9.  **Negligence Per Se**
                                         10. **Breach of Express Warranty**
23                                       11. **Breach of Implied Warranty**
                                         12. **Fraudulent Misrepresentation and**
24                                           **Concealment**
                                         13. **Negligent Misrepresentation and**
25                                           **Concealment**
                                         14. **Fraud and Deceit**
26                                       15. **Willful, Wanton, and Malicious Conduct**
                                         16. **Unjust Enrichment**
27
                                         **DEMAND FOR JURY TRIAL**
28

Robins Kaplan LLP
ATTORNEYS AT LAW
LOS ANGELES

86608628.1

Plaintiff, Richard P. Carter, individually alleges:

## I.   BACKGROUND

This is an action for personal injuries and damages suffered by Plaintiff Richard P. Carter ("Plaintiff") as a direct and proximate result of Pfizer, Inc.'s ("Pfizer") negligent and wrongful conduct in connection with the design, development, manufacture, testing, packaging, promoting, marketing, distribution, labeling, and/or sale of sildenafil citrate tablets sold under the brand name Viagra® ("Viagra").

## II.   JURISDICTION AND VENUE

1.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and because Pfizer is a citizen of a state other than the state in which Plaintiff is a citizen.

2.     The Parties conferred regarding jurisdiction and venue before filing in the Northern District of California.

3.     Intradistrict Assignment.   Pursuant to Local Rule 3-5, Plaintiff asserts that the particular location or division appropriate for this case is the San Francisco Division and the Honorable Judge Richard Seeborg.  On December 11, 2015, a petition was filed with the Judicial Panel on Multidistrict Litigation (JPML) seeking coordination of cases involving individuals who used Viagra and suffered melanoma injuries.   The petition sought consolidation before this Honorable Court in the Northern District of California.  *See In re Viagra Products Liability Litigation*, MDL No. 2691.  The petition is fully briefed and unopposed by the Defendant and all other interested parties.  The JPML will hear oral arguments on March 31, 2016.

4.     Related Viagra actions are pending in this and other federal judicial districts across the country.  The parties have stipulated to stay all activity until the JPML issues an order ruling Plaintiffs' petition seeking coordination.  In view of this pretrial cooperation, Plaintiff is filing this Complaint in the Northern District of California.  Plaintiff reserves the right to assert all of his legal claims under Georgia substantive law in that Plaintiff resides in the County of Glynn, State of Georgia (hereinafter "Plaintiff's Home Forum"). For purposes of remand and trial, venue is proper in the Plaintiff's Home Forum, the United States District Court for the Southern District

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

of Georgia.

5.     Plaintiff's Home Forum is the United States District Court for the Southern District of Georgia. Plaintiff is domiciled in Georgia. Plaintiff was prescribed Viagra in Georgia, he was exposed to Viagra in Georgia, and he sustained his injuries in Georgia.

6.     Venue in this judicial district is proper under 28 U.S.C. § 1391(a) as Defendant is subject to this Court's personal jurisdiction.

7.     At all times herein mentioned, Pfizer conducted, and continues to conduct, a substantial amount of business activity in this judicial district and the Plaintiff's Home Forum. Pfizer is registered to conduct business in this district, and engaged in interstate commerce when it advertised, promoted, supplied, and sold pharmaceutical products, including Viagra, to distributors and retailers for resale to physicians, hospitals, medical practitioners, and the general public, deriving substantial revenue in California, Plaintiff's Home Forum, and throughout the United States.

III.   PARTIES

8.     Plaintiff, Richard P. Carter, is and was at all relevant times an adult resident citizen of the United States, residing in the County of Glynn, State of Georgia. The named Plaintiff's Home Forum is proper for purposes of remand, transfer, and venue.

9.     Defendant Pfizer, Inc. is a Delaware corporation with its principal place of business at 235 East 42nd Street, New York, New York, 10017. Defendant's registered agent is C T Corporation System, 818 West Seventh Street, Suite 930, Los Angeles, California 90017.

10.    At all relevant times Pfizer, including its owners, employees, parent companies, subsidiaries, affiliates, and agents, were engaged in the business of designing, testing, manufacturing, packaging, marketing, distributing, promoting, selling, and providing warnings and/or instructions for Viagra in California, Plaintiff's Home Forum, and throughout the United States.

IV.    FACTS

   A.    **Background**

11.    On March 27, 1998, the U.S. Food and Drug Administration approved a new drug

application ("NDA") from Pfizer Pharmaceuticals Production Corporation Limited for the manufacture and sale of sildenafil citrate.

12.   Sildenafil citrate, sold under the brand name Viagra, is an oral tablet prescribed to men with erectile dysfunction.

13.   Erectile dysfunction is the medical designation for a condition in which a man cannot achieve or maintain an erection sufficient for satisfactory sexual activity. Since achieving and/or maintaining an erection involves the brain, nerves, hormones, and blood vessels, any condition that interferes with any of these functional areas of the body may be causally related to an individual's erectile dysfunction. These problems become more common with age, but erectile dysfunction can affect a man at any age.

14.   Viagra treats erectile dysfunction by inhibiting the secretion of phosphodiesterase type 5 ("PDE5"), an enzyme responsible for the degradation of cyclic guanosine monophosphate ("cGMP"). When the cGMP is not degraded by the PDE5, smooth muscles in the corpus cavernosum relax; this, in turn, permits an inflow of blood to the corpus cavernosum, creating an erection.

15.   The National Institutes of Health estimate that erectile dysfunction affects as many as thirty million men in the United States. [1]

**B.   Prevalence of Viagra in Market**

16.   In its 2013 Annual Report, Pfizer states that it accumulated revenue exceeding $1,800,000,000 from worldwide sales of Viagra. This statistic is particularly significant in light of the fact that Pfizer lost exclusivity of Viagra throughout Europe in 2013, which in itself led to a drop in profits from the previous calendar year.

17.   Viagra holds approximately 45% of the Unites States market share for erectile dysfunction medications.[2]

18.   Pfizer estimates that Viagra has been prescribed to more than 35 million men

---

[1] NIH Consensus Development Panel on Impotence (July 7, 1993).
[2] Jacque Wilson, *Viagra: The Little Blue Pill That Could*, CNN, Mar. 27, 2013, *available at*: http://www.cnn.com/2013/03/27/health/viagra-anniversary-timeline/index.html.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

worldwide.[3]

19.    In 2012 alone, physicians wrote approximately eight million prescriptions for Viagra.[4]

**C.    Pfizer's Knowledge of Defect**

20.    In a 1997 FDA Carcinogenicity Assessment Committee Report, rats were given 60 mg/kg per day of sildenafil, a dose less than the maximum dose approved for human consumption, and an increased proliferation in thyroid follicular cells was observed.[5]   Evidence from a separate study suggested an alternative explanation of increased proliferation, however, this study was conducted with a different dosage and did not apply the 60 mg/kg dosage given to rats that experienced a proliferation of thyroid follicular cells.

21.    In the same FDA report, mice studies were not carried to completion due to increased mortality.[6]   Groups receiving a 30 mg/kg dose of sildenafil were near or below 20 percent survival and were terminated after 13-15 months of treatment. Groups receiving a 10 mg/kg dose of sildenafil were near 20 percent survival and were terminated after 19-22 months of treatment.

22.    Unbeknownst to most Viagra users, recent studies have shown that the cellular activity providing the mechanism of action for Viagra may also be associated with the development and/or exacerbation of melanoma.

23.    The American Cancer Society states that melanoma is "the most serious type of skin cancer."[7]

24.    According to the National Cancer Institute, part of the National Institutes of Health, melanoma is more likely than other skin cancers to spread to other parts of the body, thereby causing further tissue damage and complicating the potential for effective treatment and

---

[3] Hilary Stout, *Viagra: The Thrill That Was*, N.Y. TIMES, June 5, 2011, *available at*:
http://query.nytimes.com/gst/fullpage.html?res=9B06E3DF173FF936A35755C0A9679D8B63.
[4] Wilson, *supra* note 4.
[5] *Carcinogenicity Assessment Report and FDA-CDER Rodent Carcinogenicity Database Factsheet*, NDA #20-895 (1997), available at:
http://www.accessdata.fda.gov/drugsatfda_docs/nda/98/viagra/carcin_rep.pdf.
[6] *Id.*
[7] American Cancer Society, *Skin Cancer Facts*, last revised March 19, 2014, *available at*:
http://www.cancer.org/cancer/cancercauses/sunanduvexposure/skin-cancer-facts.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

eradication of the cancerous cells.[8]

25.    Several studies have linked the mechanism of action for Viagra to cell mutation cultivating melanomagenesis, or the creation of melanocytes which develop into melanoma.

26.    A study published in 2011 found that treatment with Viagra can promote melanoma cell invasion.[9]  Specifically, by inhibiting PDE5, Viagra mimics an effect of gene activation and therefore may potentially function as a trigger for the creation of melanoma cells.

27.    A 2012 study published in the Journal of Cell Biochemistry also found that PDE5 inhibitors were shown to promote melanin synthesis, [10]  which may exacerbate melanoma development.[11]

28.    On April 7, 2014, an original study ("the JAMA study") was published on the website for the *Journal of the American Medical Association Internal Medicine* which, in light of the previous studies, sought to examine the direct relationship between sildenafil use and melanoma development in men in the United States.[12]  The JAMA study was published in the journal's June 2014 edition.

29.    Among 25,848 participants, the JAMA study reported that recent sildenafil users at baseline had a significantly elevated risk of melanoma, with a "hazard ratio" of 1.84; in other words, the study participants who had recently used sildenafil exhibited an 84% increase in risk of developing or encouraging invasive melanoma.  The study also reported that individuals that had used Viagra at any time in the past ("ever use") had an even greater significant elevated risk of melanoma, with a "hazard ratio" of 1.92.[13]

---

[8] National Cancer Institute, *Types of Skin Cancer*, last updated Jan. 11, 2011, *available at*: http://www.cancer.gov/cancertopics/wyntk/skin/page4.
[9] I. Arozarena, et al., *Oncogenic BRAF Induces Melanoma Cell Invasion by Downregulating The cGMP-Specific Phosphodiesterase PDE5A*, 19 CANCER CELL 45 (2011).
[10] X Zhang, et al., *PDE5 Inhibitor Promotes Melanin Synthesis Through the PKG Pathway in B16 Melanoma Cells*, 113 J. CELL BIOCHEM. 2738 (2012).
[11] F.P. Noonan, et al., *Melanoma Induction by Ultraviolet A But Not Ultraviolet B Radiation Requires Melanin Pigment*, 3 NATURE COMMUNICATIONS 884 (2012).
[12] Wen-Qing Li, Abrar A. Qureshi, Kathleen C. Robinson, & Jiali Han, *Sildenafil Use and Increased Risk of Incident Melanoma in U.S. Men: A Prospective Cohort Study*, 174 JAMA INTERNAL MEDICINE 964 (2014).
[13] *Id.*

**D.** **Consumer Expectations**

30.    Since Viagra's FDA approval in 1998, Pfizer has engaged in a continuous, expensive, and aggressive advertising campaign to market Viagra to men worldwide as a symbol of regaining and enhancing one's virility.

31.    Pfizer has engaged in increasingly aggressive marketing techniques and strategies to promote the use of Viagra in the face of increasing pharmaceutical competition. By means of demonstration, a 2004 article in The Chicago Tribune cited industry reports stating that Pfizer spent "tens of millions of dollars each month on direct-to-consumer advertising [ ]."[14]

32.    Pfizer has also been criticized by regulators, physicians and consumer groups for its attempts to target younger men in its advertising. Doctors and federal regulators stated that "such ads sen[t] a confusing message to patients who might really benefit from the drug."[15]

33.    While designing and formulating Viagra, Pfizer discovered or should have discovered that the drug's mechanism of action, the inhibition of PDE5, also presented a significant risk of development and/or exacerbation of melanoma.

34.    Despite these significant findings, Pfizer has made no efforts in its ubiquitous Viagra advertisements to warn users about the potential risk of developing melanoma that has been scientifically linked to its drug.

35.    Members of the general public had no plausible means through which they could have discovered the significant risk of melanomagenesis associated with PDE5 inhibition.

36.    Prescribing physicians would not have had the same level of access to the research and development conducted by Pfizer prior to its decision to manufacture Viagra for general public use.

37.    Pfizer failed to communicate to the general public that the inhibition of PDE5 inherently necessary to the efficacy of Viagra would also present a significant risk of one's

---

[14] Bruce Japsen, *Viagra's 2 Rivals Grab Market Share In A Year*, CHICAGO TRIBUNE, Sept. 23, 2004, *available at* http://articles.chicagotribune.com/2004-09-23/business/0409230283_1_viagra-erectile-levitra.

[15] Bruce Japsen, *Toned-Down Advertising Credited for Viagra Gains*, CHICAGO TRIBUNE, Feb. 8, 2007, *available at* http://articles.chicagotribune.com/2007-02-08/business/0702080063_1_viagra-erectile-pfizer-spokesman.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    development or exacerbation of cancerous cells.

2         38.    For example, no individual prescribed to use Viagra would believe or be expected to

3    know that his use of Viagra would expose him to an increased risk of developing melanoma or

4    exacerbating the growth and/or invasion of melanocytes already present in his body.

5         39.    Pfizer expected or should have expected individuals who suffered from erectile

6    dysfunction to ingest Viagra as a means to treat their condition.

7         40.    Pfizer expected or should have expected physicians treating erectile dysfunction to

8    prescribe Viagra as a means to treat the condition.

9         41.    The risk presented by ingesting Viagra would be present from the moment of

10   manufacture; that is, the user would not need to change or alter the drug itself or the means by

11   which it was ingested in order for the drug to carry the same risk of harm as described herein.

12       **E.    Risks and Benefits of Viagra Use**

13       42.    At all times relevant hereto, Viagra was useful to some members of the population;

14   namely, men diagnosed with erectile dysfunction.

15       43.    Erectile dysfunction is not fatal, nor does it present any related symptoms or

16   characteristics harmful to one's physical health; however, Viagra is indicated to provide the

17   benefit of allowing men with erectile dysfunction to achieve and maintain an erection.

18       44.    Viagra also encourages the development of melanoma in the body of a user, thereby

19   placing them at a significant health risk.

20       45.    Pfizer manufactured, marketed and sold Viagra as a PDE5 inhibitor; however, the

21   mechanism of action that made the drug effective in treating erectile dysfunction simultaneously

22   enhanced the risk of the user developing and/or exacerbating melanoma.

23       46.    At the time Viagra was formulated and manufactured, Pfizer knew or should have

24   known that the drug posed a significantly heightened risk to users, specifically through the

25   increased likelihood that those users would develop melanoma because of the chemical reactions

26   inherent to the drug's functioning.

27       47.    Through the testing and formulating of Viagra, and before the initiation of the drug's

28   mass manufacture, Pfizer knew or should have known in the exercise of ordinary care that the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

chemical reactions inherent to Viagra's mechanism of action would present a cancer-related health hazard to potential future users.

48.     The risk presented by the use of Viagra through PDE5 inhibition – a characteristic inherent to the drug's potential efficacy – was unquestionably far more significant than the benefit provided to its users.

49.     Because the risk of using Viagra so greatly outweighs the benefits of such use, the drug presents an unreasonably dangerous risk when used in its intended condition.

**F.     Facts Regarding Plaintiff**

50.     Plaintiff began pharmaceutical treatment with Viagra for erectile dysfunction in or about August of 2007. It was originally prescribed by his physician, Dr. James Greene at Family Practitioners of Glynn, in Brunswick, Georgia.

51.     Plaintiff continued to fill his Viagra prescriptions and take the drug regularly until on or about November 2015, or later.

52.     On or about September 17, 2013, Dr. William Mitchell of Renue Surgery Center conducted a biopsy of a skin lesion on Plaintiff's right axilla/armpit.  On or about September 17, 2013, the biopsied skin was diagnosed as melanoma.

53.     On or about September 17, 2013, Plaintiff underwent a deep excision of his right axilla/armpit melanoma at Renue Surgery Center, in Brunswick, Georgia. On or about November 6, 2013, Plaintiff also underwent a second wide excision of the right axilla melanoma at Renue Surgery Center, in Brunswick, Georgia. On or about December 6, 2013, Plaintiff underwent a third wide excision of the right axilla melanoma at Renue Surgery Center, in Brunswick, Georgia.

54.     Since first being diagnosed with melanoma, Plaintiff is now more susceptible to development of future cancers and has had to remain vigilant in monitoring his skin for lesions.

55.     As a direct, proximate, and legal result of Pfizer's negligence and wrongful conduct, and the unreasonably dangerous and defective characteristics of the drug Viagra, Plaintiff suffered severe and permanent physical and emotional injuries. His physical injuries have included melanoma as well as the multiple surgeries necessitated by his skin cancer diagnosis. Plaintiff has endured not only physical pain and suffering but also economic loss, including

1  significant expenses for medical care and treatment. Because of the nature of his diagnosis, he

2  will certainly continue to incur such medical expenses in the future. As a result of these damages,

3  Plaintiff seeks actual and punitive damages from Pfizer.

4      **G.**    **Summary**

5      56.    At all times relevant to this lawsuit, Pfizer engaged in the business of researching,

6  licensing, designing, formulating, compounding, testing, manufacturing, producing, processing,

7  assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising

8  for sale or selling the prescription drug Viagra in California, Plaintiff's Home Forum, and

9  throughout the United States.

10     57.    For the duration of these efforts, Pfizer directed its advertising efforts to consumers

11 located across the nation, including consumers in the State of California, Plaintiff's Home Forum,

12 and throughout the United States.  Such efforts were also aimed at prescribing physicians across

13 the nation, including prescribing physicians in the State of California, Plaintiff's Home Forum,

14 and throughout the United States.

15     58.    At all times mentioned in this Complaint, Pfizer's officers and directors participated

16 in, authorized, and directed the production and aggressive promotion of Viagra when they knew,

17 or with the exercise of reasonable care should have known, of the risk of developing melanoma

18 associated with Viagra use. In doing so, these officers and directors actively participated in the

19 tortious conduct which resulted in the injuries suffered by many Viagra users, including Plaintiff.

20     59.    Pfizer purposefully downplayed, understated and outright ignored the melanoma-

21 related health hazards and risks associated with using Viagra. Pfizer also deceived potential

22 Viagra users by relaying positive information through the press, including testimonials from

23 retired, popular United States politicians, while downplaying known adverse and serious health

24 effects.

25     60.    Pfizer concealed material information related to melanoma development from

26 potential Viagra users.

27     61.    In particular, Pfizer fails to mention any potential risk for melanoma development

28 and/or exacerbation associated with Viagra use in the drug label, package inserts, and the

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1 | warnings the company includes in its commercials, online and print advertisements.

2 |     62.   As a result of Pfizer's advertising and marketing, and representations about its

3 | product, men in the United States, including the Plaintiff, used Viagra.  If Plaintiff in this action

4 | had known the risks and dangers associated with taking Viagra, Plaintiff would have elected not

5 | to take Viagra and, consequently, would not have been subject to the increased risk of melanoma.

6 | **V.**     **CAUSES OF ACTION**

7 | 
8 | 

**FIRST CAUSE OF ACTION**
**Unfair and Deceptive Trade Practices**
**(Unfairness)**

9 |     63.   Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

10 |     64.   California Business & Professions Code Section 17200 ("Unfair Competition Law"

11 | or "UCL") and applicable statutes and laws of Plaintiff's Home Forum preclude unfair

12 | competition: *i.e.*, the employment of any unlawful, unfair or fraudulent business acts or practices;

13 | and, any unfair, deceptive, untrue or misleading advertising (Cal. Bus. & Prof. Code Section

14 | 17500).  This prohibition extends to any act, omission, or conduct affecting the rights of

15 | consumers.

16 |     65.   Pfizer has designed and continues to design, manufacture, market, sell, and place into

17 | the stream of commerce the Viagra purchased and used in California, Plaintiff's Home Forum,

18 | and throughout the United States.  Pfizer has failed and continues to fail to disclose and conceal

19 | the serious safety hazard posed by the design of Viagra—it does not warn Plaintiff or his

20 | physicians of the increased risk of developing melanoma as a result of using Viagra, and should

21 | not be purchased or used for that purpose.

22 |     66.   Pfizer has been and remains obligated to disclose this material safety hazard because

23 | reasonable consumers expect Viagra to perform its only intended and reasonably expected

24 | function and purpose of allowing a user to achieve and maintain an erection.  In failing to disclose

25 | this critical safety hazard, known to Pfizer but not to reasonable consumers like Plaintiff and his

26 | physicians, Pfizer engaged in and continues to engage in unfair conduct under Cal. Bus. & Prof.

27 | Code §17200 and applicable statutes and laws of Plaintiff's Home Forum.  Plaintiff incorporates

28 | herein paragraphs 1 and 25-57, *supra*, as particularized evidence of the pattern of omission and

    

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

concealment perpetrated by Pfizer against Plaintiff.

67.    As a result of Pfizer's violations of the UCL and applicable statutes and laws of Plaintiff's Home Forum, Plaintiff is entitled to appropriate equitable relief and monetary relief in the form of restitution and interest.  Plaintiff is also entitled to recover penalties, as well as an award of attorneys' fees, costs, and expenses for prosecuting this action.

68.    **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

**SECOND CAUSE OF ACTION**
**Unfair and Deceptive Trade Practices**
**(Fraud)**

69.    Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

70.    California Business & Professions Code Section 17200 ("Unfair Competition Law" or "UCL") and applicable statutes and laws of Plaintiff's Home Forum preclude unfair competition: *i.e.*, the employment of any unlawful, unfair or fraudulent business acts or practices; and, any unfair, deceptive, untrue or misleading advertising (Cal. Bus. & Prof. Code Section 17500).  This prohibition extends to any act, omission, or conduct affecting the rights of consumers.

71.    Pfizer has designed and continues to design, manufacture, market, sell, and place into the stream of commerce the Viagra purchased and used in California, Plaintiff's Home Forum, and throughout the United States. Pfizer has failed and continues to fail to disclose and conceal the serious safety hazard posed by the design of Viagra—it does not warn Plaintiff or his physicians of the increased risk of developing melanoma as a result of using Viagra, and should not be purchased or used for that purpose.

72.    Pfizer has been and remains obligated to disclose this material safety hazard because reasonable consumers like Plaintiff expect Viagra to perform its only intended and reasonably expected function and purpose of allowing them to achieve and maintain an erection.  In failing to disclose this critical safety hazard, known to Pfizer but not to reasonable consumers like Plaintiff

or his physicians, Pfizer engaged in and continues to engage in fraudulent conduct by omission under Cal. Bus. & Prof. Code §17200 and applicable statutes and laws in Plaintiff's Home Forum. Plaintiff incorporates herein paragraphs 1 and 25-57, *supra*, as particularized evidence of the pattern of omission and concealment perpetrated by Pfizer against Plaintiff.

73.     As a result of Pfizer's violations of the UCL and applicable statutes and laws in Plaintiff's Home Forum, Plaintiff is entitled to appropriate equitable relief and monetary relief in the form of restitution and interest.  Plaintiff is also entitled to recover penalties, as well as an award of attorneys' fees, costs, and expenses for prosecuting this action.

74.     **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### THIRD CAUSE OF ACTION
**Unfair and Deceptive Trade Practices**
**(Unlawfulness)**

75.     Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

76.     Pfizer's conduct is unlawful under the UCL because it violates Cal. Civ. Code § 1750, *et seq*. (hereinafter "Consumer Legal Remedies Act" or "CLRA") and applicable statutes and laws in Plaintiff's Home Forum.   Through omission and concealment, Pfizer has misrepresented and continues to misrepresent that Viagra: (a) has characteristics, uses or benefits that it does not have (Section 1770(a)(5)); and, (b) is of a particular standard, quality, or grade when they are of another (Section 1770(a)(7)).  Plaintiff incorporates herein paragraphs 1 and 25-57, *supra*, as particularized evidence of the pattern of misrepresentation by omission perpetrated by Pfizer against Plaintiff.

77.     Were it not for Pfizer's unlawful conduct, Plaintiff would not have purchased Viagra. Instead, he would have purchased safe and reliable erectile dysfunction medication fit and safe for its intended purpose.

78.     Plaintiff has and will continue to suffer injury in fact and lose money as a direct result of Pfizer's unfair competition in that he has had to undergo multiple surgeries and will continue

to be required to undergo periodic skin checks to ensure against recurrence.

79.    As a result of Pfizer's violations of the UCL and applicable statutes and laws in Plaintiff's Home Forum, Plaintiff is entitled to appropriate equitable relief and monetary relief in the form of restitution and interest.  Plaintiff is also entitled to recover penalties, as well as an award of attorneys' fees, costs, and expenses for prosecuting this action.

80.    **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION
### (Strict Liability – Defective Design)

81.    Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

82.    Defendant has a duty to provide adequate warnings and instructions for Viagra, to use reasonable care to design a product that is not unreasonably dangerous to users, and to adequately test its product.

83.    At all times relevant to this action, Defendant researched, designed, tested, manufactured, packaged, labeled, marketed, distributed, promoted, and sold Viagra, placing the drug into the stream of commerce.

84.    At all times relevant to this action, Viagra was designed, tested, inspected, manufactured, assembled, developed, labeled, sterilized, licensed, marketed, advertised, promoted, sold, packaged, supplied and/or distributed by Defendant in a condition that was defective and unreasonably dangerous to consumers, including the Plaintiff.

85.    Viagra is defective in its design and/or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or its foreseeable risks exceed the benefits associated with its design and formulation.

86.    Viagra was expected to reach, and did reach, users and/or consumers, including Plaintiff, without substantial change in the defective and unreasonably dangerous condition in which it was manufactured and sold.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

87.  Plaintiff used Viagra as prescribed and in the foreseeable manner normally intended, recommended, promoted, and marketed by Defendant.

88.  Viagra was unreasonably dangerous in that, as designed, it failed to perform safely when used by ordinary consumers, including Plaintiff, when it was used as intended and in a reasonably foreseeable manner.

89.  Viagra was unreasonably dangerous and defective in design or formulation for its intended use in that, when it left the hands of the manufacturers and/or supplier, it posed a risk of serious injury which could have been reduced or avoided by the adoption of a feasible reasonable alternative design. There were safer alternative methods and designs for the like product.

90.  Viagra was insufficiently tested and caused harmful side effects that outweighed any potential utility.

91.  Viagra, as manufactured and supplied, was defective due to inadequate warnings, and/or inadequate clinical trials, testing and study, and inadequate reporting regarding the results of the clinical trials, testing and study.

92.  Viagra as manufactured and supplied by the Defendant was defective due to inadequate post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of injuries from use and/or ingestion and acquired additional knowledge and information confirming the defective and dangerous nature of Viagra, Defendant failed to provide adequate warnings to the medical community and the consumers, to whom Defendant was directly marketing and advertising; and, further, Defendant continued to affirmatively promote Viagra as safe and effective.

93.  In light of the potential and actual risk of harm associated with the drug's use, a reasonable person who had actual knowledge of this potential and actual risk of harm would have concluded that Viagra should not have been marketed in that condition.

94.  As a direct and proximate cause of the Defendant's defective design of Viagra, including the lack of appropriate warnings, Plaintiff was prescribed and used the drug rather than alternative erectile dysfunction therapies with better and/or similar efficacy. As a result, Plaintiff has suffered significant pain, injury, harm, suffering, and economic damages incurred through

cancer treatment necessitated by Viagra use.

95.     **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### FIFTH CAUSE OF ACTION
**(Strict Liability – Failure to Warn)**

96.     Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

97.     While designing and formulating Viagra, Pfizer discovered or should have discovered that the drug's mechanism of action, the inhibition of PDE5, also presented a significant risk of exacerbating melanoma.

98.     Viagra was defective and unreasonably dangerous when it left the possession of the Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff, of the dangerous risks and reactions associated with the subject product, including but not limited to the development and/or exacerbation of melanoma.

99.     Information given by Defendant to the medical community and to consumers concerning the safety and efficacy of Viagra, especially the information contained in the advertising and promotional materials, did not accurately reflect the serious and potentially fatal side effects.

100.    Had adequate warnings and instructions been provided, Plaintiff would not have been prescribed or taken Viagra, and would not have been at risk of the harmful side effects described herein.

101.    Neither Plaintiff, nor Plaintiff's physicians knew, nor could they have learned through the exercise of reasonable care, the risks of serious injury and/or death associated with and/or caused by Viagra.

102.    Defendant knew or had knowledge that the warnings that were given failed to properly warn of the increased risks of serious injury and/or death associated with and/or caused by Viagra.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

103.   Plaintiff, individually and through his prescribing physicians, reasonably relied upon the skill, superior knowledge, and judgment of the Defendant.

104.   Defendant expected Plaintiff, individually and through his prescribing physician, to rely upon the information contained in the subject product's package insert and other advertising and promotional materials.

105.   Defendant had a continuing duty to warn Plaintiff and his prescribing physician of the risk of development and/or exacerbation of melanoma directly associated with Viagra use.

106.   Safer alternatives were available that were just as effective and without the risks posed by Viagra.

107.   As a direct and proximate result of Pfizer's failure to warn Plaintiff or his physician of the significant melanoma-related risks associated with Viagra's mechanism of action, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

108.   **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION
### (Failure to Test)

109.   Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

110.   Through the testing and formulating of Viagra, and before the initiation of the drug's mass manufacture, Pfizer knew or should have known in the exercise of ordinary care that the chemical reactions inherent to Viagra's mechanism of action would present a cancer-related health hazard to potential future users like Plaintiff.

111.   Defendant failed to adequately test the safety of Viagra.

112.   Had Defendant adequately tested relative efficacy of Viagra compared with other readily available, alternative erectile dysfunction therapies and disclosed those results to the medical community and the public, Plaintiff would not have purchased and used Viagra.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

113.  As a direct and proximate result of Pfizer's failure to adequately test Viagra, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

114.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

<u>**SEVENTH CAUSE OF ACTION**</u>
**(Negligence)**

115.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

116.  Defendant owed Plaintiff a duty to exercise reasonable care when designing, testing, manufacturing, labeling, marketing, advertising, promoting, distributing, and/or selling Viagra.

117.  At all relevant times to this action, Defendant owed a duty to properly warn Plaintiff, physicians, consumers, and the public of the risks, dangers and adverse side effects of Viagra, including the increased risk of serious injury and death, when the drug was used as intended or in a way that Defendant could reasonably have anticipated.

118.  Defendant breached its duty by failing to exercise ordinary care in the preparation, design, research, testing, development, manufacturing, inspection, labeling, marketing, promotion, advertising and selling of Viagra, as set forth below.

119.  Defendant failed to exercise due care under the circumstances and therefore breached this duty in numerous ways, including the following:

  a.  failing to research and test Viagra properly and thoroughly before releasing the drug to the market;

  b.  failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of Viagra;

  c.  failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of Viagra which indicated serious risks associated with its use;

1    d.    failing to conduct adequate post-market monitoring and surveillance of Viagra;

2    e.    failing to conduct adequate analysis of adverse event reports;

3    f.    designing, manufacturing, marketing, promoting, advertising, distributing, and

4          selling Viagra to physicians and consumers, including Plaintiff, without an

5          adequate warning of the significant and dangerous risks of Viagra and without

6          proper instructions to avoid the harm that could foreseeably occur as a result of

7          using the drug;

8    g.    failing to exercise due care when advertising and promoting Viagra;

9    h.    negligently continuing to manufacture, market, advertise, and distribute Viagra

10         after Defendant knew or should have known of the risks of serious injury and/or

11         death associated with using the drug;

12   i.    failing to use due care in the preparation and development of Viagra to prevent

13         the aforementioned risk of injuries to individuals when the drug was ingested;

14   j.    failing to use due care in the design of Viagra to prevent the aforementioned

15         risk of injuries to individuals when the drug was ingested;

16   k.    failing to conduct adequate pre-clinical testing and research to determine the

17         safety of Viagra;

18   l.    failing to conduct adequate post-marketing surveillance and exposure studies to

19         determine the safety of Viagra, while Defendant knew or should have known

20         that post-marketing surveillance would be the only means to determine the

21         relative risk of Viagra for causing serious injury and/or death in the absence of

22         clinical trials, and that such surveillance would be necessary for a due diligence

23         program that would alert Defendant of the need to change the drug's warnings

24         or to withdraw it from the market altogether;

25   m.    failing to completely, accurately and in a timely fashion, disclose the results of

26         the pre-marketing testing and post-marketing surveillance and testing to

27         Plaintiff, Plaintiff's physicians, other consumers, the medical community, and

28         the FDA;

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

86608628.1

- 19 -

n.   failing to accompany Viagra with adequate and proper warnings regarding all possible adverse side effects, including serious injury (e.g., development and/or exacerbation of melanoma) associated with the use of the same and instructions on ways to safely use Viagra to avoid injury;

o.   failing to use due care in the manufacture, inspection, and labeling of Viagra to prevent the aforementioned risk of injuries to individuals who used the drug;

p.   failing to use due care in the promotion of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

q.   failing to use due care in the sale and marketing of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

r.   failing to use due care in the selling of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

s.   failing to provide adequate and accurate training and information to the sales representatives who sold the drug;

t.   failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of Viagra;

u.   failing to conduct or fund research into the development of medications of this type which would pose the least risk of causing serious injury and death as alleged herein, into the early detection of persons who might be most susceptible to such reactions, and into the development of better remedies and treatment for those who experience these tragic adverse reactions;

v.   failing to educate healthcare providers, patients, and the public about the safest use of the drug;

w.   failing to give patients and healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient; and

x.   being otherwise reckless, careless and/or negligent.

120.   Despite the fact that Defendant knew or should have known that Viagra increased the risk of serious injury and/or death, Defendant continued to promote and market Viagra to doctors

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

and to consumers, including Plaintiff, when safer and more effective methods of treatment were available.

121.  As a direct and proximate result of the negligence committed by Pfizer in testing and ultimately selling Viagra, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

122.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## EIGHTH CAUSE OF ACTION
### (Gross Negligence)

123.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

124.  Defendant had a duty to exercise reasonable care in the warning about, design, testing, manufacture, marketing, labeling, sale, and/or distribution of Viagra, including a duty to ensure that Defendant's product, Viagra, did not cause users to suffer from unreasonable and dangerous side effects.

125.  Defendant failed to exercise reasonable care in the warning about, design, testing, manufacture, marketing, labeling, sale, and/or distribution of Defendant's product, Viagra, in that Defendant knew or should have known that taking Viagra caused unreasonable and life-threatening injuries, as alleged herein.

126.  Defendant was grossly negligent under the circumstances and breached its duty of care in numerous ways, including the following:

    a.    failing to test Viagra properly and thoroughly before releasing the drug to the market;

    b.    failing to analyze properly and thoroughly the data resulting from the pre-marketing tests of Viagra;

    c.    failing to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of Viagra which

1        indicated risks associated with its use;

2        d.      failing to conduct adequate post-market monitoring and surveillance of Viagra;

3        e.      failing to conduct adequate analysis of adverse event reports;

4        f.      designing, manufacturing, marketing, advertising, distributing, and selling

5                Viagra to consumers, including Plaintiff, without an adequate warning of the

6                significant and dangerous risks of Viagra and without proper instructions to

7                avoid the harm which could foreseeably occur as a result of using the drug;

8        g.      failing to exercise due care when advertising and promoting Viagra;

9        h.      recklessly continuing to manufacture, market, advertise, and distribute Viagra

10               after Defendant knew or should have known of the risks of serious injury and/or

11               death associated with using the drug;

12       i.      failing to use due care in the preparation and development of Viagra to prevent

13               the aforementioned risk of injuries to individuals when the drug was ingested;

14       j.      failing to use due care in the design of Viagra to prevent the aforementioned

15               risk of injuries to individuals when the drug was ingested;

16       k.      failing to conduct adequate pre-clinical testing and research to determine the

17               safety of Viagra;

18       l.      failing to conduct adequate post-marketing surveillance and exposure studies to

19               determine the safety of Viagra, while Defendant knew or should have known

20               that post-marketing surveillance would be the only means to determine the

21               relative risk of Viagra for causing serious injury and death as alleged herein in

22               the absence of clinical trials, and that such surveillance would be necessary for

23               a due diligence program that would alert Defendant to the need to change the

24               drug's warnings or to withdraw it from the market altogether;

25       m.      failing to completely, accurately and in a timely fashion, disclose the results of

26               the pre-marketing testing and post-marketing surveillance and testing to

27               Plaintiff, her doctors, other consumers, the medical community, and the FDA;

28       n.      failing to accompany Viagra with proper warnings regarding all possible

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

adverse side effects associated with the use of the same;

o.   failing to use due care in the manufacture, inspection, and labeling of Viagra to prevent the aforementioned risk of injuries to individuals who used the drug;

p.   failing to use due care in the promotion of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

q.   failing to use due care in the sale and marketing of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

r.   failing to provide adequate and accurate training and information to the sales representatives who sold the drug;

s.   failing to provide adequate and accurate training and information to healthcare providers for the appropriate use of Viagra;

t.   failing to conduct or fund research into the development of medications of this type which would pose the least risk of causing such serious injury and death, as alleged herein, into the early detection of persons who might be most susceptible to such reactions, and into the development of better remedies and treatment for those who experience these tragic adverse reactions;

u.   failing to educate healthcare providers and the public about the safest use of the drug;

v.   failing to give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient; and

w.   was otherwise grossly negligent.

127.  Although Defendant knew, or recklessly disregarded, the fact that Defendant's product, Viagra, caused serious and potentially fatal side effects, Defendant continued to market Viagra to consumers, including Plaintiff, without disclosing these side effects including the risks of serious injury and/or death.

128.  Defendant knew and/or consciously or recklessly disregarded the fact that consumers such as Plaintiff would suffer injury as a result of Defendant's failure to exercise reasonable care as described above.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

129.  Defendant knew of, or recklessly disregarded the defective nature of Defendant's product, Viagra, as set forth herein, but continued to design, manufacture, market, and sell Viagra, so as to maximize sales and profits at the expense of the health and safety of the public, including Plaintiff, in conscious and/or reckless disregard of the foreseeable harm caused by Viagra.

130.  As a direct and proximate result of Pfizer's gross negligence, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

131.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

<u>**NINTH CAUSE OF ACTION**</u>
**(Negligence Per Se)**

132.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

133.  At all times herein mentioned, Defendant had an obligation not to violate the law, including the Federal Food, Drug and Cosmetic Act and the applicable regulations, in the manufacture, design, formulation, compounding, testing, production, processing, assembling, inspection, research, promotion, advertising, distribution, marketing, promotion, labeling, packaging, preparation for use, consulting, sale, warning, and post-sale warning and other communications of the risks and dangers of Viagra.

134.  By reason of its conduct as alleged herein, Defendant violated provisions of statutes and regulations, including, but not limited to, the following:

a.  Defendant violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §§ 331 and 352, by misbranding Viagra;

b.  Defendant failed to follow the "[g]eneral requirements on content and format of labeling for human prescription drugs" in violation of 21 C.F.R. § 201.56;

c.  Defendant failed to follow the "[s]pecific requirements on content and format

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

of labeling for human prescription drugs" in violation of 21 C.F.R. § 201.57; and

    d.    Defendant advertised and promoted Viagra in violation of 21 C.F.R. § 202.1; and

    e.    Defendant violated 21 C.F.R. § 201.57(e) by failing to timely and adequately change the Viagra label to reflect the evidence of an association between Viagra and the development and/or exacerbation of melanoma suffered by Plaintiff.

These statutes and regulations impose a standard of conduct designed to protect consumers of drugs, including Plaintiff. Defendant's violations of these statutes and regulations constitute negligence per se.

135.  As a direct and proximate result of Defendant's statutory and regulatory violations, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

136.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## TENTH CAUSE OF ACTION
### (Breach of Express Warranty)

137.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

138.  At all times relevant hereto, Pfizer expressly represented and warranted to Plaintiff and his healthcare providers, by and through statements made by Pfizer or its authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Viagra is safe, effective, and proper for its intended use.

139.  Defendant breached expressed warranties with respect to Viagra in the following particulars:

    a.    Defendant represented through its labeling, advertising, marketing materials,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

seminar presentations, publications, notice letters, and regulatory submissions that Viagra was safe, and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using Viagra;

b.   Defendant represented that Viagra was as safe, and/or safer than other alternative medications and fraudulently concealed information that demonstrated that Viagra was not safer than alternatives available on the market; and

c.   Defendant represented that Viagra was more efficacious than other alternative medications and fraudulently concealed information regarding the true efficacy of the drug.

140. Viagra does not conform to Defendant's express representations because its mechanism of action, the inhibition of the PDE5 enzyme, also increases the risk of the development and/or exacerbation of melanoma.

141. At all relevant times, Viagra did not perform as safely as an ordinary consumer would expect when used as intended or in a reasonably foreseeable manner.

142. Plaintiff, Plaintiff's physicians, other consumers, and the medical community relied upon Defendant's express warranties, resulting in Plaintiff's ingestion of the drug.

143. As a direct and proximate result of the breach of warranty committed by Pfizer, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

144. **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### ELEVENTH CAUSE OF ACTION
**(Breach of Implied Warranty)**

145. Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

146.  At all relevant and material times, Defendant manufactured, distributed, advertised, promoted, and sold Viagra.

147.  At all relevant times, Defendant intended that Viagra be used in the manner that Plaintiff in fact used it.

148.  Defendant impliedly warranted Viagra to be of merchantable quality, safe and fit for the use for which Defendant intended it, and Plaintiff in fact used it.

149.  Defendant was aware that consumers, including Plaintiff, would use Viagra to achieve and maintain an erection; which is to say that Plaintiff was a foreseeable user of Defendant's product Viagra.

150.  Defendant knew, or had reason to know, that Plaintiff's physician would rely on Defendant's judgment and skill in providing Viagra for its intended use.

151.  Plaintiff and his physician reasonably relied upon the skill and judgment of Defendant as to whether Viagra was of merchantable quality, safe and fit for its intended use.

152.  The drug was expected to reach and did in fact did reach consumers, including Plaintiff, without substantial change in the condition in which it was manufactured and sold by Defendant.

153.  Defendant breached various implied warranties with respect to Viagra including the following particulars:

   a.   Defendant represented through its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Viagra was safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using Viagra;

   b.   Defendant represented that Viagra was as safe, and/or safer than other alternative medications and fraudulently concealed information that demonstrated that Viagra was not safer than alternatives available on the market; and

   c.   Defendant represented that Viagra was more efficacious than other alternative medications and fraudulently concealed information regarding the true efficacy

1    of the drug.

2        154.  In reliance upon Defendant's implied warranty, Plaintiff used Viagra as prescribed

3    and in the foreseeable manner normally intended, recommended, promoted, and marketed by

4    Defendant.

5        155.  Viagra was neither safe for its intended use nor of merchantable quality, as had been

6    implicitly warranted by Pfizer, in that Viagra's mechanism of action – the inhibition of PDE5 –

7    inherently presented a significant increase in the user's risk of developing and/or exacerbating

8    melanoma.

9        156.  Defendant breached its implied warranty to Plaintiff in that Viagra is unreasonably

10   dangerous, defective, and unfit for the ordinary purposes for which Viagra was used. It was not of

11   merchantable quality, safe and fit for its intended use, or adequately tested.

12       157.  As a direct and proximate result of the falsity of the warranties implicated by Pfizer's

13   actions and omissions, Plaintiff suffered significant pain, injury, suffering, and economic

14   damages incurred through cancer treatment from melanoma caused by Viagra use.

15       158.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages

16   as detailed in the Global Prayer for Relief including: compensatory damages, exemplary

17   damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and

18   such other and further relief as this Court deems just and proper.

19                          **TWELFTH CAUSE OF ACTION**
20                    **(Fraudulent Misrepresentation and Concealment)**

21       159.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

22       160.  Defendant intentionally and fraudulently misrepresented to consumers and

23   physicians, including Plaintiff, Plaintiff's physicians and the public in general, that Viagra had

24   been tested and found to be safe, well-tolerated and/or more efficacious than alternative

25   medications and/or methods of erectile dysfunction therapy and that Viagra's benefits outweighed

26   its risks when used as instructed, when, in fact, Defendant knew, or should have known, and

27   fraudulently concealed that Viagra is dangerous to patients and that the benefits of its use are far

28   outweighed by the risks for Plaintiff and many others.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

161.  At all relevant times, Defendant knew of the use for which Viagra was intended and expressly and/or impliedly warranted its drug was of merchantable quality and safe and fit for such use.

162.  Defendant had sole access to material facts concerning the dangers and unreasonable risks of Viagra.

163.  Defendant's superior knowledge and expertise, its relationship of trust and confidence with doctors and the public, its specific knowledge regarding the risks and dangers of Viagra and its intentional dissemination of promotional and marketing information about Viagra for the purpose of maximizing its sales, each gave rise to the affirmative duty to meaningfully disclose and provide all material information about the risks and harms associated with the drug.

164. Defendant made false affirmative representations, omissions and/or fraudulently concealed material adverse information regarding the dangers, risks, safety, benefits, utility and effectiveness of Viagra in order to induce Plaintiff, Plaintiff's physicians, and the public in general to rely upon such representations and to use Viagra. By failing to disclose important safety and injury information and suppressing material facts about Viagra to Plaintiff, Plaintiff's physicians and the public in general, Defendant further led Plaintiff and Plaintiff's physicians to rely upon the safety of Viagra.

165.  Defendant had a duty to disclose such information, arising from Defendant's actions of making, marketing, promoting, labeling, distributing and selling pharmaceutical products to Plaintiff and others.

166.  Defendant's false representations and concealments were fraudulently made, in that Viagra in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

167. Defendant committed acts of intentional misrepresentation and intentional concealment by suppressing material facts relating to the dangers and substantial risks of serious injuries and/or death associated with, and caused by, the use of Viagra.

168.  Defendant made such false representations, omissions and concealments with the intent or purpose that Plaintiff and Plaintiff' physicians would rely upon such representations,

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

leading to the use of Viagra by Plaintiff.

169. Defendant made fraudulent affirmative misrepresentations and omissions and fraudulent concealments of material facts regarding the safety and effectiveness of Viagra and of the dangers and risks of injuries associated with Viagra, including:

    a.    Defendant fraudulently represented through its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Viagra had been adequately tested and found to be safe and effective for erectile dysfunction, and fraudulently concealed information about the substantial risks of serious injury and/or death associated with using Viagra; and

    b.    Defendant fraudulently represented that Viagra was as safe and/or safer and/or more efficacious than other alternative erectile dysfunction therapies, and fraudulently concealed information that demonstrated that Viagra was not safer and/or more efficacious than alternatives available on the market.

170. Defendant knew, had reason to know, or should have known that these representations and actively concealed adverse information were false, and that Viagra had defects and was unreasonably dangerous. Yet, Defendant willfully, wantonly, and recklessly disregarded its obligation to provide truthful representations regarding the safety and risk of Viagra to consumers, including Plaintiff, and to the medical community.

171. Defendant did not have adequate proof upon which to base such representations, and in fact, given Defendant's knowledge about Viagra's pharmacology and reported adverse events, Defendant knew or should have known that these representations, omissions and/or concealments were false and fraudulent. Specifically, Defendant knew of, possessed evidence and/or had reason to know that Viagra had defects and was unreasonably dangerous, causing the development and/or exacerbation of melanoma, as detailed herein.

172. Defendant's misrepresentations were made with the intent that physicians and patients, including Plaintiff, would rely upon them and were made with the intent of defrauding and deceiving Plaintiff, other consumers, and the medical community to induce and encourage the

sale of Viagra.

173.  Plaintiff, Plaintiff's physicians, and others, did rely upon and/or were induced by the misrepresentations, omissions and/or active concealment of the dangers of Viagra to the detriment of the Plaintiff.

174.  Defendant's fraudulent representations and concealments evince its callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

175.  In selecting treatment, Plaintiff's physicians and Plaintiff relied on and were induced by Defendant's misrepresentations concerning the dangers of Viagra.

176.  As detailed herein, Defendant made these fraudulent misrepresentations, omissions and concealments through statements and comments to the press, labeling, advertising, marketing and promotion materials, seminar presentations, publications, Dear Doctor letters and regulatory submissions.

177.  Plaintiff and the treating medical community did not know that the representations, omissions, and/or concealments made by Defendant were false and were justified in reasonably relying upon Defendant's representations.

178.  Had Defendant not fraudulently misrepresented and concealed such information, Plaintiff would not have ingested Viagra and suffered resulting harm.

179.  Defendant made the aforesaid representations and concealments intentionally and in the course of Defendant's business as designers, manufacturers, and distributors of Viagra despite having no reasonable basis for the assertion that these representations were true, without having accurate or sufficient information concerning the aforesaid representations and/or knowing these representations were false. Defendant was aware that without such information it could not accurately make the aforesaid representations.

180.  At the time Defendant made the aforesaid representations and at the time Plaintiff received Viagra, Plaintiff, Plaintiff's physicians, and the public in general reasonably believed them to be true. At the time that Plaintiff received Viagra, Defendant failed to adequately inform Plaintiff and/or his prescribing doctors that Viagra use increased the risk of the development

and/or exacerbation of melanoma, despite Defendant being in possession of such evidence. Plaintiff received no adequate warnings, either written or verbal, that Viagra caused these side effects, and relied on these omissions and concealments.

181.  As a direct and proximate consequence of Defendant's fraudulent misrepresentations, omissions and intentional concealment of material facts, upon which Plaintiff reasonably relied, Plaintiff sustained significant pain, injury, harm, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

182.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## THIRTEENTH CAUSE OF ACTION
### (Negligent Misrepresentation and Concealment)

183.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

184.  At all relevant times, Defendant designed, tested, manufactured, packaged, marketed, distributed, promoted, and sold Viagra.

185.  At all relevant times, Defendant knew of the use for which Viagra was intended and expressly and/or impliedly warranted that the drug was of merchantable quality and safe and fit for such use.

186.  Defendant's superior knowledge and expertise, its relationship of trust and confidence with doctors and the public, its specific knowledge regarding the risks and dangers of Viagra and its intentional dissemination of promotional and marketing information about Viagra for the purpose of maximizing its sales, each gave rise to the affirmative duty to disclose and provide all material information about the risks and harms associated with the drug.

187.  Defendant recklessly, and/or negligently represented to Plaintiff, Plaintiff's physicians, and other persons and professionals whom Defendant knew would rely, that Viagra was safe to ingest and that the utility of this product outweighed any risk in use for their intended purposes.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

188.   Defendant recklessly and/or negligently failed to disclose to Plaintiff, and others, important safety and efficacy information, thereby suppressing material facts about the drug, while having a duty to disclose such information, which duty arose from its actions of making, marketing, promoting, distributing and selling pharmaceutical products to Plaintiff and others.

189.   Defendant led Plaintiff to rely upon the safety of the product in its use.

190.   The false representations of the Defendant were recklessly and/or negligently made in that Viagra in fact caused injury, was unsafe, and the benefits of its use were far outweighed by the risk associated with use thereof.

191.   Defendant committed acts of reckless and/or negligent misrepresentation and reckless and/or negligent concealment by suppressing material facts relating to the dangers and injuries associated with, and caused by, the use of Viagra.

192.   Defendant knew or should have known that its representations and/or omissions were false.   Defendant made such false, negligent and/or reckless representations with the intent or purpose that Plaintiff and Plaintiff's physicians would rely upon such representations, leading to the use of Viagra by Plaintiff.

193.   Defendant recklessly and/or negligently misrepresented, and/or omitted information with respect to Viagra in the following particulars:

    a.   Defendant represented through its labeling, advertising, marketing materials, seminar presentations, publications, notice letters, and regulatory submissions that Viagra was safe and fraudulently withheld and concealed information about the substantial risks of serious injury and/or death associated with using Viagra;

    b.   Defendant represented that Viagra was as safe and/or safer than other alternative erectile dysfunction therapies and fraudulently concealed information, which demonstrated that Viagra was not safer than alternatives available on the market; and

    c.   Defendant represented that Viagra was more efficacious than other alternative erectile dysfunction therapies and fraudulently concealed information, regarding the true efficacy of the drug.

194.   Defendant made affirmative misrepresentations and recklessly and/or negligently omitted material adverse information regarding the safety and effectiveness of Viagra.

195.   Defendant made these misrepresentations and/or omissions at a time when Defendant knew or had reason to know that Viagra had defects and was unreasonably dangerous and was not what Defendant had represented to the medical community, the FDA and the consuming public, including Plaintiff.

196.   Defendant omitted, suppressed, and/or concealed material facts concerning the dangers and risk of injuries associated with the use of Viagra including, serious injury and death. Furthermore, Defendant was willfully blind to, ignored, downplayed, avoided, and/or otherwise understated the serious nature of the risks associated with the use of Viagra in order to increase sales.

197.   Defendant's misrepresentations and/or omissions were undertaken by Defendant with an intent that doctors and patients, including Plaintiff, rely upon them.

198.   Defendant's misrepresentations and/or omissions were undertaken with the intent of defrauding and/or deceiving Plaintiff, other consumers, and the medical community to induce and encourage the sale of Viagra.

199.   Defendant's misrepresentations and/or omissions evinced the Defendant's callous, reckless, willful, and depraved indifference to the health, safety, and welfare of consumers, including Plaintiff.

200.   Plaintiff's physician and Plaintiff relied on and were induced by Defendant's misrepresentations, omissions, and/or active concealment of the dangers of Viagra in selecting treatment.

201.   Plaintiff and Plaintiff's physicians did not know that the representations made by Defendant were false and were justified in relying upon Defendant's representations.

202.   Had Plaintiff been aware of the increased risk of side effects associated with Viagra and the relative efficacy of Viagra compared with other readily available alternative erectile dysfunction therapies, Plaintiff would not have taken Viagra.

203.   As a direct and proximate consequence of Defendant's misrepresentations, Plaintiff

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

1    sustained injuries and damages alleged herein including specifically those alleged herein.

2        204.  Plaintiff relied on the misrepresentations made by Pfizer in purchasing and using

3    Viagra.

4        205.  Plaintiff's reliance on Pfizer's misrepresentations was justified because such

5    misrepresentations were made by entities that were in a position to know of and disclose any

6    potentially harmful information concerning the use of Viagra.

7        206.  If Plaintiff had known of the information concealed by Pfizer regarding the

8    melanoma-related risks posed by Viagra, Plaintiff would not have purchased and subsequently

9    used Viagra.

10       207.  As a direct and proximate result of the negligent misrepresentations by Defendant,

11   Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through

12   cancer treatment from melanoma caused by Viagra use.

13       208.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages

14   as detailed in the Global Prayer for Relief including: compensatory damages, exemplary

15   damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and

16   such other and further relief as this Court deems just and proper.

17                          **FOURTEENTH CAUSE OF ACTION**
18                                **(Fraud and Deceit)**

19       209.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

20       210.  At all times relevant hereto, Pfizer conducted a sales and marketing campaign to

21   promote the sale of Viagra and willfully deceive Plaintiff, Plaintiff's healthcare providers, and the

22   general public as to the benefits, health risks, and consequences of using Viagra.

23       211.  While conducting its sales and marketing campaign, Pfizer knew that Viagra is

24   neither safe nor fit for human consumption; that using Viagra is hazardous to health; and that

25   Viagra has a propensity to cause serious injuries, such as those suffered by Plaintiff.

26       212.  From the time the company first marketed and distributed Viagra until the present,

27   Pfizer willfully deceived Plaintiff by concealing from him, his healthcare providers, and the

28   general public the risks and dangers concerning the use of Viagra.

86608628.1                                    - 35 -

213.  Pfizer intentionally concealed and suppressed the facts concerning Viagra's melanoma-related risks with the intent to defraud potential consumers, as Pfizer knew that healthcare providers would not prescribe Viagra, and consumers like Plaintiff would not use Viagra, if they were aware of the dangers posed by using Viagra.

214.  As a direct and proximate result of Pfizer's fraudulent and deceitful conduct, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

215.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

### FIFTEENTH CAUSE OF ACTION
**(Willful, Wanton, and Malicious Conduct)**

216.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

217.  Pfizer directly or indirectly, maliciously and wantonly made, created, manufactured, designed, tested, labeled, supplied, packaged, distributed, promoted, marketed, advertised, warned, and/or sold Viagra.

218. Pfizer breached its duty and was wanton and malicious in its actions, misrepresentations, and omissions in that it:

      a.    failed to test Viagra properly and thoroughly before releasing the drug to the market;

      b.    failed to analyze properly and thoroughly the data resulting from the pre-marketing tests of Viagra;

      c.    failed to report to the FDA, the medical community, and the general public those data resulting from pre- and post-marketing tests of Viagra which indicated risks associated with its use;

      d.    failed to conduct adequate post-market monitoring and surveillance of Viagra;

      e.    failed to conduct adequate analysis of adverse event reports;

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

f.    designed, manufactured, marketed, advertised, distributed, and sold Viagra to consumers, including Plaintiff, without an adequate warning of the significant and dangerous risks of Viagra and without proper instructions to avoid the harm which could foreseeably occur as a result of using the drug;

g.    failed to exercise due care when advertising and promoting Viagra;

h.    willfully and wantonly continued to manufacture, market, advertise, and distribute Viagra after Defendant knew or should have known of the risks of serious injury and/or death associated with using the drug;

i.    willfully and wantonly failed to use due care in the preparation and development of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

j.    willfully and wantonly failed to use due care in the design of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

k.    failed to conduct adequate pre-clinical testing and research to determine the safety of Viagra;

l.    failed to conduct adequate post-marketing surveillance and exposure studies to determine the safety of Viagra, while Defendant knew or should have known that post-marketing surveillance would be the only means to determine the relative risk of Viagra for causing such serious injury and death as alleged herein in the absence of clinical trials, and that such surveillance would be necessary for a due diligence program that would alert Defendant to the need to change the drug's warnings or to withdraw it from the market altogether;

m.    failed to completely, accurately and in a timely fashion, disclose the results of the pre-marketing testing and post-marketing surveillance and testing to Plaintiff, Plaintiff's physicians, other consumers, the medical community, and the FDA;

n.    failed to accompany Viagra with proper warnings regarding all possible adverse side effects associated with the use of the same;

o.   willfully and wantonly failed to use due care in the manufacture, inspection, and labeling of Viagra to prevent the aforementioned risk of injuries to individuals who used the drug;

p.   willfully and wantonly failed to use due care in the promotion of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

q.   willfully and wantonly failed to use due care in the sale and marketing of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

r.   willfully and wantonly failed to use due care in the selling of Viagra to prevent the aforementioned risk of injuries to individuals when the drug was ingested;

s.   failed to provide adequate and accurate training and information to the sales representatives who sold the drug;

t.   failed to provide adequate and accurate training and information to healthcare providers for the appropriate use of Viagra;

u.   failed to conduct or fund research into the development of medications of this type which would pose the least risk of causing serious injury and death as alleged herein, into the early detection of persons who might be most susceptible to such reactions, and into the development of better remedies and treatment for those who experience these tragic adverse reactions;

v.   failed to educate healthcare providers and the public about the safest use of the drug;

w.   failed to give healthcare providers adequate information to weigh the risks of serious injury and/or death for a given patient; and

x.   otherwise behaved willfully, wantonly, and maliciously.

219.  Pfizer knew or should have known that Viagra was unreasonably dangerous and could cause serious injuries, including death.

220.  As a direct and proximate result of the wanton and malicious acts and omissions of

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

Pfizer, the Plaintiff sustained injuries and damages alleged herein.

221.  As a direct and proximate result of Pfizer's willful, wanton and malicious conduct, Plaintiff suffered significant pain, injury, suffering, and economic damages incurred through cancer treatment from melanoma caused by Viagra use.

222.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## SIXTEENTH CAUSE OF ACTION
### (Unjust Enrichment)

223.  Plaintiff adopts and incorporates all preceding paragraphs as if stated fully herein.

224.  At all times relevant to this action, Defendant designed, advertised, marketed, promoted, manufactured, distributed, supplied, and/or sold Viagra.

225.  Plaintiff purchased Viagra for the purpose of achieving and maintaining an erection.

226.  Defendant has accepted payment from Plaintiff for the purchase of Viagra.

227.  Plaintiff did not receive the safe and effective pharmaceutical product for which Plaintiff intended to purchase.

228.  It is inequitable and unjust for Defendant to retain this money because the Plaintiff did not in fact receive the product Defendant represented Viagra to be.

229.  Based on the foregoing, Plaintiff is entitled to equitable relief against Defendant on account of its unjust enrichment.

230.  **WHEREFORE,** Plaintiff demands judgment against Defendant and seeks damages as detailed in the Global Prayer for Relief including: compensatory damages, exemplary damages, and punitive damages, together with interest, the costs of suit and attorneys' fees, and such other and further relief as this Court deems just and proper.

## VI.   PUNITIVE DAMAGES

231.  Prior to the manufacturing, sale, and distribution of Viagra, Pfizer knew that said medication was in a defective condition as previously described herein, and knew that those who

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

were prescribed the medication would experience and had already experienced severe physical, mental, and emotional injuries.

232. Pfizer, through its officers, directors, managers, and agents, knew that Viagra presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and, as such, Pfizer unreasonably subjected consumers of said drugs to risk of injury or death from using Viagra.

233. Pfizer and its agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of Viagra knowing these actions would expose persons to serious danger in order to advance the company's market share and profits.

234. The acts, conduct, and omissions of Pfizer, as alleged throughout this Complaint, were willful and malicious.

235. Pfizer's unconscionable conduct warrants an award of exemplary and punitive damages against the company.

## VII.  GLOBAL PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays judgment against Pfizer as follows:

A.  Declare, adjudge and decree the conduct of Defendant as alleged herein to be unlawful;

B.  Actual, compensatory, punitive and/or exemplary damages in such amount to be determined at trial and as provided by applicable law;

C.  Costs of suit, including reasonable attorneys' fees, and expenses as provided by law; and

D.  Other, further, and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## VIII. DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

1

Dated: April 1, 2016                    **ROBINS KAPLAN LLP**

2

3                                       By: */s/ Gary L. Wilson*

4                                           Gary L. Wilson (CA Bar #139358)
                                            Munir R. Meghjee
                                                Will Seek Admission *Pro Hac Vice*
5                                           Troy F. Tatting
                                                Will Seek Admission *Pro Hac Vice*
6
                                            800 LaSalle Avenue, Suite 2800
7                                           Minneapolis, MN 55402
                                            Telephone: (612) 349-8500
8                                           Facsimile: (612) 339-4181
                                            gwilson@robinskaplan.com
9                                           mmeghjee@robinskaplan.com
                                            ttatting@robinskaplan.com
10
                                            *Attorneys for Plaintiff*
11                                          *Richard P. Carter*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
LOS ANGELES

86608628.1

- 41 -